IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

|                                            | §  |                              |
|--------------------------------------------|----|------------------------------|
| **PATSY LACOMBE,**                         | §  |                              |
|                                            | §  |                              |
| **Plaintiff,**                             | §  |                              |
|                                            | §  |                              |
| **vs.**                                    | §  | **Civil Action No. 6:03-CV-066-C** |
|                                            | §  |                              |
|                                            | §  |                              |
| **JO ANNE B. BARNHART,**                   | §  |                              |
| **Commissioner of Social Security,**       | §  |                              |
|                                            | §  |                              |
| **Defendant.**                             | §  |                              |

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed July 28, 2003, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff filed a brief in support of her complaint on November 24, 2004, Defendant filed her brief on December 20, 2004, and Plaintiff filed her reply brief on January 5, 2005. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

## I.   STATEMENT OF THE CASE

Plaintiff filed applications for a period of disability and disability insurance benefits on June 27, 1997, alleging disability beginning October 2, 1992. Tr. 15, 80-82. Plaintiff's applications

were denied initially and upon reconsideration.  Tr. 60-64, 68-71.  Plaintiff filed a Request for

Hearing by Administrative Law Judge on October 30, 1997, and this matter came for hearing before

the Administrative Law Judge ("ALJ") on February 24, 1998.  Tr. 15, 29-57.  Plaintiff, represented

by a non-attorney, testified in her own behalf.  Tr. 31-48.  Plaintiff's husband, Robert LaCombe,

appeared and also testified.  Tr. 48-51.  Diane Harsnickle, a vocational expert ("VE"), appeared and

testified as well.  Tr. 51-56.  The ALJ issued a decision unfavorable to Plaintiff on April 23, 1998.

Tr. 12-24.

In his opinion, the ALJ noted that the specific issue was whether Plaintiff was under a

disability within the meaning of the Social Security Act.  He found that Plaintiff last met the

disabaility insured status requirements on September 30, 1997; therefore, for entitlement to disability

insurance benefits, Plaintiff's period of disability must be shown to have begun as of or prior to that

date.  He found that Plaintiff had not engaged in substantial gainful activity at any time since

October 2, 1992.  Tr. 16, 22.  He found that Plaintiff had "severe" impairments, including a

herniated disc; carpal tunnel in both wrists; headaches; blurred and double vision; pain in head,

neck, back, wrists, and legs; numbness and tingling in extremities; loss of coordination; and overall

weakness.  Tr. 16.  He further found that Plaintiff's severe impairments, singularly or in

combination, were not severe enough to meet or equal in severity any impairment listed in the

Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  Tr. 16, 22-23.  Therefore, the ALJ

was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to

perform her past relevant work or other work existing in the national economy. Tr. 17-22.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms,

including pain, and the extent to which these symptoms can be reasonably accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of Social

Security Ruling 96-7p.  Tr. 19.

The ALJ found that Plaintiff could not return to her past relevant work as an office worker in accounts payable/receivable, a sales representative with a cosmetic company, a cosmetic associate, a typesetter, or a grocery checker. Tr. 21, 23. He noted that Plaintiff, at 50 years of age, was considered a "person closely approaching advanced age" with a G.E.D. *Id.*

The ALJ found that Plaintiff retained the RFC to perform the physical exertional requirements of sedentary work activity, limited by the need to intermittently sit or stand, not necessarily at will, but at times other than lunch and breaks; to work that requires no more than occasional use of the upper extremities for repetitive activity; and to work that does not require repetitive neck flexion, rotation, and extension. Having found that Plaintiff's exertional limitations did not allow her to perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments. Tr. 22, 23-24. The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of telephone solicitor, with 1,800,000 jobs nationally, and information clerk, with 180,000 jobs nationally. *Id.* The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through September 30, 1997. Tr. 24.

On May 21, 1998, Plaintiff submitted a Request for Review of Hearing Decision/Order, which included a request for a copy of the hearing tape. Tr. 10. The requested tape was furnished and action on the case was deferred for 45 days. Tr. 9. The Appeals Council issued its opinion on February 25, 2000, indicating that although it had considered the additional evidence and the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 6-8. The ALJ's decision, therefore, became the final decision of the Commissioner.

Plaintiff requested a time extension and, on May 21, 2000, the Appeals Council extended the time within which a civil action could be commenced for a period of 30 days from the date of receipt of the letter.  Tr. 4.  On June 21, 2001, Plaintiff filed a complaint in the United States District Court for the Northern District of Texas.  Tr. 244-45.  The United States District Judge granted the Defendant's motion to reverse and remand on February 15, 2002, and remanded this matter to the commissioner for further administrative proceedings.  Tr. 252.  On April 24, 2002, the Appeals Council ordered the case remanded to an ALJ for further proceedings.  Tr. 254-55.

This matter came for a second hearing before the ALJ on September 23, 2002.  Tr. 235, 530-56.  Plaintiff was represented by an attorney and testified in her own behalf.  Tr. 532-41, 553-56.  Carol Bennett, a VE, appeared and testified as well.  Tr. 542-53.  The ALJ issued a decision unfavorable to Plaintiff on December 27, 2002.  Tr. 232-40.

In his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 2, 1991, her alleged onset date of disability.  Tr. 236.  He found that Plaintiff had severe impairments, including back pain and carpal tunnel syndrome.  *Id.*  He noted that although Plaintiff alleged disability beginning on October 2, 1992, there was no medical evidence prior to 1996. Tr. 236-37.  The ALJ discussed Plaintiff's treatment by Dr. Chris W. Vanderzant, a treating physician.  *Id.*

The ALJ noted that although Plaintiff alleged disability as a basis for her depression, there were no objective medical findings prior to her last-insured date.  Tr. 237.  He noted Plaintiff's testimony that she began taking antidepressants in 1994 or 1995, which was not supported by the record.  *Id.* The ALJ concluded that Plaintiff did not have a medically determinable mental impairment prior to September 30, 1997.  *Id.*

The ALJ discussed Plaintiff's testimony that she lives with her disabled husband and his elderly mother, that he drives her around and does most of the house work, and that she can dress

herself and help care for her mother-in-law.  Tr. 238.  He also noted that Plaintiff testified that she

has suffered from severe headaches for years and that another problem is severe incontinence, an

allegation which was not supported by the record.  *Id*.  He noted that no medical evidence supported

her testimony, that at least one of Plaintiff's physicians indicated that he could not find anything to

explain Plaintiff's symptoms, and that none of her doctors had opined that she was under a disability

at any time prior to the expiration of her insured status.  *Id*.  He also noted that Plaintiff was

dismissed from her prescribed physical therapy program in part due to failure to regularly attend.

*Id*.  The ALJ thus found that Plaintiff's testimony was not credible.  *Id*.

The ALJ found that Plaintiff retained the RFC for sedentary work activity, limited by the

need to sit or stand intermittently while in the performance of job duties; no complex work

instructions, due to her educational level; no more than occasional use of the upper extremities for

repetitive activity; and no repetitive flexion or extension of the neck.  *Id*.  The ALJ noted that

Plaintiff could not return to any of her past relevant work.  *Id*.

The ALJ noted the testimony of the VE, who indicated that a hypothetical person of

Plaintiff's educational background, past work experience, and RFC could perform the job duties of

information clerk, with 45,000 jobs in the national economy and 2,100 jobs in Texas. Tr. 238-39.[1]

The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social

Security Act at any time through September 30, 1997.  Tr. 239.

On January 6, 2003, Plaintiff indicated her decision to forgo further administrative appeals

and submitted her exceptions to the Appeals Council.  Tr. 230-31.  The Appeals Council issued a

decision on May 28, 2003, discussing Plaintiff's exceptions and concluding that there was no basis

for the Appeals Council to assume jurisdiction.  Tr. 227-29.  The decision of the ALJ, therefore,

---

[1]       In its opinion, the Appeals Council noted that the VE also identified the job of a
telephone solicitor, with 4,000 jobs in Texas and 100,000 jobs in the national economy.  Tr. 228.

became the final decision of the Commissioner after remand by the court.  Tr. 228.  On July 28,

2003, Plaintiff commenced this action seeking judicial review of the Commissioner's determination

that Plaintiff was not disabled.

## II.    STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United

States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is

limited to determining whether the decision is supported by substantial evidence and whether the

Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir.

2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence

"is more than a mere scintilla and less than a preponderance," and includes "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309

F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court

will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the

Commissioner's, even if the court believes that the evidence weighs against the Commissioner's

decision.  *Masterson,* 309 F.3d at 272.  "[C]onflicts in the evidence are for the Commissioner and

not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a

claimant has the burden of proving that he or she has a medically determinable physical or mental

impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful

activity, which is defined as work activity involving significant physical or mental abilities for pay

or profit. *Newton,* 209 F.3d at 452. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled

within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271;

*Newton*, 209 F.3d at 453.  In this case, the ALJ found at step 5 that Plaintiff was not disabled because she retained the ability to perform work in the national economy.  Tr. 240.

## III.   DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ erred in finding that her urinary incontinence was not a "severe" impairment.  Plaintiff further argues that the ALJ failed to appropriately evaluate her mental impairment, failed to incorporate limitations imposed by these impairments into the hypothetical questions posed to the VE, and failed to make a finding as to Plaintiff's ability to maintain employment.

**A.**     **Whether the ALJ erred in finding that her urinary incontinence was not a "severe" impairment and in evaluating restrictions imposed by this condition.**

Plaintiff notes that the ALJ did not conclude that her urinary incontinence was a "severe" impairment.  Plaintiff alleges that, in finding that her urinary incontinence was not "severe," the ALJ applied an incorrect standard and  his finding was not supported by substantial evidence.   In making his severity determination, the ALJ noted that "the second step of the process inquires whether the claimant has a severe impairment, i.e., one which would have more than a slight effect on her ability to engage in those basic work-related activities set forth in 20. C.F.R. § 404.1521(b)," and indicated that Plaintiff "alleges disability due to back pain and carpel tunnel syndrome," which the ALJ concluded were "severe."  Tr. 236.

A review of the record is required to determine whether there was substantial evidence that Plaintiff's urinary incontinence was not severe, taking into account the standards provided by the severity regulation, as construed by the Fifth Circuit in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), and whether the ALJ applied the correct legal standard in making his severity finding.

A physical or mental impairment is in turn defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir., 1992) (citing 42 U.S.C. § 423(d)(3)). The existence of an impairment does not in itself establish disability; a claimant is disabled only if she is "incapable of engaging in *any* substantial gainful activity." *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir.1986). Under the Social Security Regulations, the severity of an impairment or impairments is considered at the second step of the five-step sequential analysis. *See* 20 C.F.R. § 404.1520. A claimant must show that he or she has a severe medical impairment before the claimant can be determined disabled. 20 C.F.R. § 404.1520(a)(4)(ii). The regulations further provide that an impairment must significantly limit the person's ability to do basic work activities in order to be considered severe. 20 C.F.R. § 404.1520(c). Thus,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Commissioner] will find that you do not have a severe impairment and are, therefore, not disabled.

*Id.*

The Supreme Court held that this "severity regulation" is valid on its face and "is not inconsistent with the statutory definition of disability." *Bowen v. Yuckert,* 482 U.S. 137, 146, 154, 107 S.Ct. 2287, 2293, 2298 (1987).

The Fifth Circuit has considered the severity regulation, both before and after the Supreme Court's decision in *Bowen v. Yuckert*. In *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the court approved of an earlier construction of the severity regulation that set this standard for determining whether a claimant's impairment is severe:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

*Id.* at 1101 (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984). In *Loza v. Apfel,* 219 F.3d 378 (5th Cir. 2000), the court held that the standard set forth in *Stone* remained the correct standard. *Id.* at 392. However, the Commissioner may require a claimant to make a *de minimis* showing that her impairment is severe enough to interfere with her ability to do work under this standard. *Anthony*, 954 F.2d at 293 n.5.

The court in *Stone* specifically required that ALJs and Appeals Councils in the Fifth Circuit must set forth the correct standard in their decisions by reference to the *Stone* opinion or to another opinion of the same effect or by including an express statement in the decision that the construction given to the severity regulation is the construction used in *Stone.* 752 F.2d at 1106. Failure to do so will result in the court's assumption that the ALJ or Appeals Council has applied an incorrect standard. *Id.* Moreover, the claimant need only make a *de minimis* showing that her impairment is severe enough to interfere with her ability to do work to satisfy this standard. *Anthony*, 954 F.2d at 294.

In making his severity finding, the ALJ specifically referred to the standard set forth in *Stone,* indicating that he considered whether Plaintiff's impairments "would have more than a slight effect on her ability to engage in" basic work-related activities. Tr. 236. The ALJ, however, did not cite to *Stone* or another opinion of the same effect; rather, he quoted the standard using the language set forth in *Stone. Compare* Tr. 236 with *Stone*, 752 F.2d at 1106. The ALJ noted that although Plaintiff alleged that one of her problems was severe incontinence, such allegation was not supported in the record. Tr. 238. The ALJ further found that Plaintiff's testimony was not credible. *Id.*

Plaintiff argues that the ALJ used the wrong standard and that such failure requires remand to the Commissioner. In *Stone* the Fifth Circuit was concerned that too many claimants were being found "not disabled" at an early stage, that is, step 2 of the evaluation process. Step 2 requires the ALJ to determine whether a claimant has any impairments that are "severe." If the ALJ finds that

a claimant does not have any "severe" impairments at step 2, the evaluation process ends without proceeding to steps 3-5, and the claimant is determined to be "not disabled." The Fifth Circuit in *Stone* explained the reason for the standard that it had established:

> The prevailing idea, then, among the courts and Congress, is that some impairments are so slight that the ability of the claimant to work can be decided without a full evaluation of vocational factors. The factfinder is entitled to follow a sequential process that disposes of those cases at that early stage. But it is impermissible to make that disposition on the basis of a standard of severity that denies disability benefits to claimants who are in fact unable to perform substantial gainful activity.

752 F.2d at 1102-03.

Due to its concern and recent experience regarding cases that had been disposed of on the basis of nonseverity (i.e., at step 2), the Fifth Circuit gave notice of how it would thereafter determine whether the proper standard was applied and the sanction for noncompliance.

> In view of both the [Commissioner's] position in this case and our recent experience with cases where the disposition has been on the basis of nonseverity, we will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c)(1984) is used. Unless the correct standard is used, the claim must be remanded to the [Commissioner] for reconsideration.

*Stone*, 752 F.2d at 1106.

*Stone* appears to require remand in any case in which the ALJ fails to properly reference the *Stone* standard. The court's subsequent rulings, however, have clarified the holding to require remand only when the ALJ failed to reference the *Stone* standard and the case was adjudicated at step 2 of the sequential evaluation process. *See Chaparro v. Bowen,* 815 F.2d 1008 (5th Cir. 1987); *Jones v. Bowen,* 829 F.2d 524 (5th Cir. 1987); *Lopez v. Bowen,* 806 F.2d 632 (5th Cir. 1986); *McClatchy v. Barnhart,* 2004 WL 2810100 (W.D. Tex.).

The claimant argued in *Chaparro* that the Commissioner was presumed to have applied the incorrect standard because no reference was made to *Stone*. The issue was waived because it was

not raised before the district court.  The court stated that, in any event, the "case did not turn on whether or not Chaparro's impairment was severe, but on whether Chaparro could return to his past relevant work – an inquiry unaffected by the test set forth in *Stone*." *Chaparro*, 815 F.2d at 1011. Thus *Chaparro* recognized that "the test set forth in *Stone*" does not apply to a case decided on whether a claimant could return to his past relevant work, a matter determined at step 4.  The claimant's argument was considered irrelevant to the disposition of his case which advanced to step 4 for determination.

In *Jones* the claimant argued that the court failed to apply the correct legal standard in determining the severity of his impairments as required in *Stone*.  829 F.2d at 527 n.1.  He argued that his hypertension was characterized as "mild" which resulted in the denial of benefits.  *Id.*  The court held that there was no error similar to that found in *Stone* "where the claimant's request for benefits was prematurely denied based on an improper determination of "non-severity."  *Id.*  Thus the court recognized that the *Stone* standard was based upon, and applicable only to, "premature" denials of disability which are based on improper determinations of "non-severity."  That occurs only at step 2.

The claimant in *Lopez* cited *Stone* in support of his argument that the ALJ erred in the determination of the severity of his impairments.  806 F.2d at 634 n.1.  The court held that *Stone* did not apply because the ALJ did find that Lopez had severe impairments.  *Id.*  Claimants found to have severe impairments advance beyond step 2 in the evaluation process.  Thus the court held that the *Stone* standard does not apply to cases that advance beyond step 2.

It follows that in cases adjudicated at step 3, step 4, or step 5 of the evaluation process, the ALJ's failure to make reference to the standard established in *Stone* does not, without more, require remand.

In this case, the ALJ's opinion sufficiently demonstrates that he applied the correct standard in determining the severity of Plaintiff's impairments.  Moreover, this case was adjudicated at step 5 based on the ALJ's determination that there were a significant number of jobs in the national economy that she could perform.  Tr.  239-40.  I find that the ALJ did not apply an incorrect standard or err by failing to cite to *Stone* or one of its progeny in making his severity finding.

Plaintiff further alleges that the record demonstrates that her urinary incontinence was a "severe" impairment, noting that the record includes various references to her complaints.  The record, indeed, indicates that Plaintiff reported a history of urinary incontinence to her care providers.  *See, e.g.,* Tr. 170, 181, 182, 296, 311, 315, 333, 424, 512.  Plaintiff testified that her incontinence was aggravated by her coughing, and at the second hearing testified that sneezing, coughing, getting tired, and not being able to use the restroom frequently brings on incontinence.  Tr. 42, 539.  However, other than the notations by her providers of her complaints of urinary incontinence, the record contains no evidence indicating that any such incontinence required medical treatment or affected her attempts at work since October 2, 1992.  Dr. Vanderzant, a treating physician, noted no loss of bladder control on May 6, 1997.  Tr. 165.  Plaintiff testified that the incontinence was most severe in 1992, after she injured her back, and that she uses pads and overnight protection at night for her incontinence.  Tr. 539.  She also testified that she had not been given any medicine or treatment for incontinence.  *Id.*

Plaintiff argues that the ALJ failed to consider the evidence as to her incontinence and should have discussed such evidence, rather than selectively discussing only the evidence which favors his ultimate conclusion.  The ALJ noted in his opinion that Plaintiff's allegation of a severe  problem with incontinence was not supported by the record.  Tr. 238.  In making his credibility determination, he noted that there was no medical evidence to support her testimony and further noted that at least one doctor admitted that he could not find anything to explain her symptom.  *Id.*

Pursuant to Social Security Ruling ("SSR") 96-3p, in making the step 3 determination of the severity of an impairment, "evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities." Plaintiff's record and her testimony do not indicate any specific limitations imposed by her allegations of urinary incontinence. Moreover, an "impairment" must result from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *See* SSR 96-4p. The existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and the existence of an impairment cannot be established on the basis of symptoms alone. SSR 96-4p; 20 C.F.R. § 404.1508. Despite Plaintiff's reports of a history of incontinence, the medical record and Plaintiff's testimony demonstrate that her incontinence was not a medically determinable impairment.

Plaintiff argues that she is not claiming that she is disabled by her incontinence, only that it meets the severity requirements. Pl. Reply at 1-2. However, 20 C.F.R. § 404.1520 notes that the severity of medically determinable impairments is evaluated at step 2 of the sequential evaluation process. *See* 20 C.F.R. § 404.1520 (a)(4)(ii). *See also,* 20 C.F.R. § 404.1508 (describing what is needed to show an impairment). The record demonstrates that the ALJ did not err in finding that Plaintiff's urinary incontinence was not "severe." The record also demonstrates that the ALJ did not err by failing to incorporate any limitations imposed by Plaintiff's urinary incontinence into his RFC finding because the record does not reflect any limitations imposed by this condition. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. A review of the record in this matter indeed "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza,* 219 F.3d at 393. The ALJ did not err in evaluating Plaintiff's urinary incontinence.

-13-

**B.     Whether the ALJ erred in evaluating Plaintiff's mental impairment.**

Plaintiff alleges that the ALJ erred in evaluating her mental impairment as required by the Appeals Council, failed to obtain a consultative examination, and failed to consider and incorporate limitations imposed by this impairment into his RFC finding.

Upon remand of this matter from the District Court to the Commissioner, the Appeals Counsel noted that "a careful review of the record reveals that the medical evidence supports a finding that the claimant's depression is severe," and indicated that the ALJ should obtain updated records from the claimants mental health facility and, if necessary, obtain a consultative mental status examination to clarify the severity of Plaintiff's mental impairment.  Tr. 254-55.  In his opinion, the ALJ concluded that Plaintiff did not have a medically determinable mental impairment prior to September 30, 1997.  Tr. 237.  The record contains the records of Plaintiff's mental health treatment providers.  Tr. 192-219.  The ALJ did not order a consultative mental examination.

In his opinion, the ALJ noted that although Plaintiff alleged depression as one basis for disability, there was no evidence in the medical record reporting problems of depression prior to the expiration of her insured status on September 30, 1997.  Tr. 237.  Plaintiff notes that she sought treatment for depression only two months after expiration of her insurance benefits.  Pl. Brief at 12. She argues that "her symptomolgy [sic] very easily could have existed prior to that date."  Pl. Brief at 13.

In order to prove that she is entitled to disability benefits, Plaintiff must not only prove that she is disabled but that she became disabled prior to the expiration of her insured status.  *Anthony*, 954 F.2d at 295; *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir.1985).  Any impairment which had its onset or became disabling after the special earnings test was last met cannot serve as the basis for a finding of disability.  *Owens*, 770 F.2d at 1280.   Factors relevant to the determination of the

date of disability include "the individual's declaration of when her disability began, her work history, and available medical history."  *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990).

The record demonstrates that Plaintiff sought treatment for her mental condition and underwent a psychiatric evaluation in December 1997.  Tr. 201-04.  Dr. Diaz' impression was of dysthymic disorder[2] and pain disorder associated with both psychological factors and general medical condition on Axis I, with a current Global Assessment of Functioning ("GAF")[3] score of 50,[4] with a GAF of 60[5] in the previous year.  Tr. 205.  Dr. Diaz reported that Plaintiff appeared mildly depressed at the time of his examination.  *Id.*  The record contains no other notations indicating treatment or complaints of depression prior to the expiration of Plaintiff's insured status.  Plaintiff testified at the second hearing that she started using antidepressants in 1994 or 1995.  Tr. 540.  However, the record contains no references to such treatment.

Noncontemporaneous medical records are relevant to the determination of whether onset occurred on the date alleged by the claimant and it may bear upon the severity of the claimant's condition before the expiration of his or her insured status.  *Ivy*, 898 F.2d at 1049 (internal citations

---

[2]    The essential feature of dysthymic disorder is a "chronically depressed mood that occurs for most of the day more days than not for at least two years."  *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 376-77.

[3]    The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.  This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id.*

[4]    A GAF score of 41-50 indicates "serious symptoms" such as suicidal ideation, or any "serious impairment in social, occupation, or school functioning," such as inability to keep a job or having no friends. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

[5]    The DSM-IV defines a GAF of 51-60 as moderate symptoms (e.g. flat effect, circumstantial speech, and occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

omitted).  The ALJ appropriately discussed Plaintiff's mental health treatment subsequent to the expiration of her insured status.  Tr. 237.  However, such records do not demonstrate that Plaintiff's mental health condition was disabling during the relevant period, nor do they demonstrate limitations imposed by such condition prior to September 30, 1997.  Plaintiff argues that her symptomology could have existed prior to this date is simply not supported by the record. The ALJ specifically found that Plaintiff did not have a medically determinable mental impairment prior to the expiration of her insured status.  *Id*.  While the RFC indeed includes limitations imposed by all impairments, severe or not, the ALJ's determination that Plaintiff's depression was not a medically determinable mental impairment prior to the expiration of her insured status is supported by substantial evidence in the record, and the record does not demonstrate limitations imposed by such condition before September 30, 1997.  Where the ALJ has determined that Plaintiff has a medically determinable mental impairment, he is required to evaluate the degree of functional loss imposed by Plaintiff's mental impairments, as set forth in 20 C.F.R.§§ 404.1520a and 416.920a.  Here, the ALJ found that Plaintiff did not have a medically determinable mental impairment during the relevant period and was thus not required to evaluate the degree of functional loss imposed by such impairment.

Plaintiff argues that the ALJ should have obtained a consultative medical examination which was necessary to determine when Plaintiff's mental condition became a severe impairment.  Pl. Reply at 4.  The ALJ has a duty "'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'"  *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001)(quoting *Newton*, 209 F.3d at 458).  The claimant has the burden to prove that he is disabled within the meaning of the Social Security Act.  *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).  An ALJ must order a consultative evaluation when such an evaluation is necessary to enable the ALJ to make the disability determination.  *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)(citing *Turner v.*

*Califano,* 563 F.2d 669, 671 (5th Cir. 1977)). A consultative evaluation becomes "necessary" only when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment. *Brock,* 84 F.3d at 728 (citing *Jones v. Bowe*n, 829 F.2d 524, 526 (5th Cir. 1987)). Moreover, "isolated comments by a claimant are insufficient, without further support, to raise a suspicion of non-exertional impairment." *Brock,* 84 F.3d at 729 (citing *Pierre v. Sullivan*, 884 F.2d 799, 802-03 (5th Cir. 1989)). Like the claimant in *Brock*, the record demonstrates that Plaintiff did not mention non-exertional impairments in her original request for benefits; never sought medical treatment for such impairments prior to the expiration of her insured status; and made only isolated comments at the first hearing indicating that she felt angry and worthless and had crying spells. *Brock*, 84 F.3d at 728; Tr. 46. Plaintiff specifically testified at that hearing that her biggest problem was the pain she had in her back and legs. Tr. 40. Therefore, this court finds that Brock's allegations of non-exertional impairments were the kind of isolated comments which are insufficient to raise a suspicion of non-exertional impairment. After remand, the ALJ obtained Plaintiff's mental health treatment records. The record demonstrates that the ALJ was not required to order a consultative examination in order to fulfill his duty to adequately develop the record.

This court may not, in any event, reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000)(citing *Brock*, 84 F.3d 726). In order to establish prejudice, a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result." *Carey*, 230 F.3d at 142 (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). Plaintiff argues that she has shown prejudice because "[e]vidence adduced by a psychological or psychiatric evaluation could have yielded how far in the past Plaintiff's severe symptoms of depression existed." Pl. Reply at 4. Plaintiff's testimony, her other records, and her arguments fail to demonstrate that he "could and would have adduced evidence that might have

-17-

altered the result." *Brock*, 84 F.3d at 728-29.   In this case, the ALJ met his duty to develop the record, and Plaintiff has failed to demonstrate that she was prejudiced.  The failure to obtain a consultative mental examination in this matter does not provide a basis for remand. *Brock*, 84 F.3d at 728.

Plaintiff alleges that the ALJ erred by failing to incorporate all of Plaintiff's impairments and associated limitations into the hypothetical question posed to the VE. A vocational expert is called to testify because of his familiarity with job requirements and working conditions.  *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)).  "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

Both the ALJ and Plaintiff's representative questioned the VE about whether a person who needed to use a restroom every hour or half-hour could perform the jobs identified.  Tr. 547-48.  The VE testified that if a hypothetical person had to use the restroom more frequently than every half-hour, it could lower production and affect the number of telephone solicitor jobs.  Tr. 549.

Plaintiff argues that the ALJ created a "random limitation in concentration due to Ms. LaCombe's education level," which was unfounded.  Plaintiff argues that rather than including a concentration limitation, the ALJ should have ordered a consultative mental status examination.  The limitation to jobs with no complex work instructions, which the ALJ incorporated into his RFC, was consistent with Plaintiff's complaints of inability to concentrate and confusion (Tr. 34), with the

examination of the VE at the first hearing by Plaintiff's representative (Tr. 56), and with Plaintiff's

testimony at the second hearing (Tr. 541.

The ALJ is not required to incorporate limitations into the hypothetical questions presented

to the VE that he did not find to be supported in the record.  *See Morris v. Bowen*, 864 F.2d 333, 336

(5th Cir. 1988).  The record demonstrates that the ALJ properly incorporated those limitations that

he accepted, including work at the sedentary level limited by the need to sit or stand on an

intermittent basis, though not at will; no more than occasional use of the upper extremities for

repetitive activities; and no complex instructions, into the hypothetical questions he posed to the VE.

Tr. 543-47.  The record further demonstrates that Plaintiff's representative had the opportunity to

further examine the VE and to obtain testimony on other claimed restrictions.  The ALJ did not err

by failing to incorporate the accepted limitations into the hypothetical questions posed to the VE.

Plaintiff claims that the ALJ erred in failing to determine whether Plaintiff had the ability

to maintain employment, pursuant to *Watson*, 288 F.3d at 218 and *Singletary v. Bowen*, 798 F. 2d

818, 822 (5th Cir. 1986).  In *Singletary,* the Fifth Circuit noted that "[a] finding that a claimant is

able to engage in substantial gainful activity requires more than a simple determination that the

claimant can find employment and that he can physically perform certain jobs; it also requires a

determination that the claimant can *hold* whatever job he finds for a significant period of time."

*Singletary,* 798 F.2d at 822.  The requirement for a finding of the ability to maintain employment

is not restricted to instances where non-exertional impairments are present.*See Watson*, 288 F. 3d

at 217-18.

In *Watson*, the claimant had degenerative disk disease, which caused the loss of movement

in his legs every few weeks and too much pain to work every few weeks.  *Watson*, 288 F.3d. at 218.

In *Wingo*, the ALJ found that the claimant retained the residual functional capacity to perform the

full range of work at the sedentary level and applied the Medical-Vocational Guidelines to direct a finding of "not disabled." *Wingo v. Bowen*, 852 F.2d 827, 829 (5th Cir. 1998). The ALJ in *Wingo* did not consider medical evidence about several of the claimant's impairments, as well as evidence that she was often unable to leave her bed for days at a time. *Id.* In the instant matter, there is nothing in the record to indicate that, prior to the expiration of her insured status, Plaintiff would have been unable to maintain or sustain employment at the sedentary work level subject to the limitations noted by the ALJ, and the ALJ appropriately considered the record as a whole in making his RFC determination. This matter may be distinguished from *Watson*, *Singletary,* and *Wingo*. The issue of maintaining employment was not raised by the facts in this case, and the ALJ's decision is supported by substantial evidence.

Plaintiff also argues that the ALJ failed to give her testimony and subjective complaints sufficient weight.

Pursuant to Social Security Ruling 96-7p, the adjudicator is required to go through a two-step process in evaluating a claimant's symptoms. The ALJ must first:

> consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms. . . . Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

In his opinion, the ALJ found that Plaintiff did not have a medically determinable mental impairment. Tr. 237. The ALJ noted that a claimant's statement alone is insufficient to establish that he or she has a physical or mental impairment, citing 20 C.F.R. § 414.1528. Tr. 237. He noted

Plaintiff's subjective complaints regarding her physical and mental impairment(s) and extensively discussed the evidence in the medical record in making his credibility finding. *Id.* The ALJ noted Dr. Vanderzant, a treating physician, indicated that the CT scan of the brain was essentially normal, that Plaintiff might have a mild "double crush" syndrome involving the left upper extremity with signs of a mild left C7 radiculopathy and mild carpal tunnel syndrome, and that examination was essentially negative for any objective abnormalities. Tr. 171, 237, 302. Dr. Vanderzant also indicated that Plaintiff "has sensory symptoms without objective findings." Tr. 165. The ALJ noted that Plaintiff testified that her disabled husband does most of the housework and drives, although Plaintiff is able to dress herself and to help with caring for her mother-in-law. Tr. 238. He noted Plaintiff's dismissal from physical therapy within two months, in part due to Plaintiff's failure to regularly attend sessions. Tr. 238.

The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The record demonstrates that the ALJ considered and discussed Plaintiff's subjective allegations and testimony. The record further demonstrates that his credibility determination was supported by substantial evidence in the record. He properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The ALJ did not err in considering Plaintiff's subjective complaints, and he appropriately considered the entire case record, "including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record," SSR 96-7p, at *1-2 in making

his credibility determination, and in determining the weight to give to each piece of evidence. The ALJ included information about Plaintiff's symptoms, medications, treatments, and limitations, both as reported by Plaintiff and as reflected in the record. He incorporated limitations supported by the record in making his RFC finding by limiting Plaintiff to sedentary level work subject to specified limitations. Moreover, the ALJ's RFC finding and evaluation of the record as a whole reflected his credibility determination. Questions of credibility are the responsibility of the ALJ to resolve. *Masterson*, 309 F.3d at 272. The ALJ did not err in weighing and considering Plaintiff's testimony and subjective complaints and reports of her symptoms and limitations, nor did he err by failing to incorporate her claimed limitations into his RFC finding or into the hypothetical questions posed to the VE. The ALJ did not apply incorrect legal standards and his decision was supported by substantial evidence in the record.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474

U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the

proposed findings, conclusions, and recommendation within ten days after being served with a copy

shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United

States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.

*See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 9th day of August, 2005.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**